United States v. Kenny Torres-Colon Good morning, Your Honor. Javier Morales on behalf of Mr. Kenny Torres-Colon. If allowed, we would like to reserve a couple of minutes, two minutes, for rebuttal. Yes. This case, Your Honors, is very fact-specific. The evidence that was presented was very simple. You have the stipulation that this person is a felon. Then the evidence regarding the possession itself is a very brief description that is summarized in the brief of the appellee, the government, at page 5. Basically, he has this person seen throwing two packages out of a car that is going 80 miles an hour. There is no evidence whatsoever what happened inside of that car. The other element, the connection between this possession and the interstate commerce was presented via the testimony of an expert. Our main thrust in this case is the lack of evidence regarding the unknowing possession. Well, how much unknowing possession, how much possession does there have to be? We have many cases which say practically instantaneous. There is evidence in the case, I think quite a bit, that your client is identified as the person throwing the material out of the car. Isn't that sufficient for the possession argument? No. Why not?  But the instruction to the jury, which was correct and has not been attacked by the government nor by us, is that knowingly entails an act that is voluntary and intentional. Well, if I pick something up that's next to me and I lower a window and I throw it out, doesn't that satisfy voluntary? I took possession. I made a decision to do something and I did it. There is no evidence that that was what happened here. There is no evidence that he picked up the gun, that he put the window down and then he threw it. The only thing that we have is the throwing. We don't have the picking up and we don't have him bringing the window down. Well, isn't it a reasonable assumption if he threw it out of the car that he had to have picked it up? Not necessarily. Right. Not necessarily, but I guess the question was isn't it a reasonable assumption? It's not unreasonable to think that happened, is it? Okay, let's take a look at what possible versions we might have, okay? One, he's the owner of the gun. He notices that the police are coming after him. He puts the window down, throws the gun, okay? He's the owner and he has the possession and he throws it. If that was the case, I wouldn't be here, okay? Second, the weapon and the fanny pack are accessible to both of them. And either Kenny says, hey driver, can I throw it? And he grabs it, puts the window down and throws it out, the case that you're saying. Or the driver says, please Kenny, grab the gun and the fanny pack and throw it. And the other alternative that I can think of is the hot potato defense. It was thrown to him, given to him without him having the intention of possessing it nor voluntarily possessing. It's given to him, it's in his hands in a matter of a second or less, but what do you do with the hot potato? Well, he had to open the window first. Yes. Did the driver open the window or he did? Presumably this argument was made to the jury, right? Yes, yes. And presumably the jury rejected it, which is why you're appealing. Yes, but the thing is... And we're just now trying to decide whether the jury was crazy when it came to that conclusion and I don't quite see why it was. Well, I think that when you have equal theories of defense and guilt, the jury is unreasonable. If it gives more weight to a theory that is equally as good as the one for the defense. In this particular case, they cannot reasonably find sufficient facts to demonstrate voluntary and intentional. You cannot find it, okay? You can have lots of different inferences. You can't infer that from what happened. The jury can't say, well, the window got opened, the fanny pack and the gun got heaved out of the window. Can't they infer that that was a voluntary act? That inference has good inference, or let's say guesswork, has the theory of the defense. It was given to him... They didn't accept the theory of the defense. Yes, but the cases say that when you have two equally theories, you don't have the preponderance of the evidence. If my theory is good and a reasonable jury could consider, then you don't have preponderance of the evidence. That's not correct. You stated it right the first time. If the inferences are equal, then you've got a good argument. But the problem you have is the window was on the passenger side. Yes, but number one, we don't know if that window was opened way before. We don't know if the driver opened the window. We don't know anything about the window. That's right. If the gun had been thrown out the driver's side, it's conceivable that it was the passenger who threw it. I understand. Well, in this case, I am not saying that he didn't throw the gun. That's accepted. I am not saying that he didn't have it in his hands. I am questioning the evidence. The sufficiency has to be voluntary and intentional. That's what I'm presenting and my scenarios. I think that the hot potato defense is a good one. So, you have a limited amount of time, and obviously you should present the arguments that you think are most important. I wonder, though, are you going to get to the unpreserved objection with respect to the rebuttal argument where the prosecutor said, when you're driving down this highway, you have to worry that this person might be in the next car? I'll take care of that right now. Number one, I think it was improper. I think that you have two big problems here. The first witness that they presented was a co-defendant. A co-defendant that brought in to present the plea agreement or parts of the plea agreement. That was involuntary. I'm interested in that issue as well. That co-defendant, as I understand it, was not a voluntary witness in this case. He was dragged in, so to speak, and took the fifth, and then the government read his plea agreement. Is that not what happened? Yes. His prior attorney filed the motion, and we had an in-chambers meeting with Judge Helpe that morning. The judge stated that, well, it's in the record, but I'm saying it's in the record. Judge Helpe was considering, if he doesn't answer the questions, I'm going to put him in jail. I'm going to hold him in contempt. So you have a person that has said that he doesn't want to testify. He's going to plead the fifth. He's forced to be there. What is presented is a section of the plea agreement that is basically a version of the facts. Specifically saying, I accept as a version of the government's facts for me being found guilty that a police officer saw Kenny Torres doing this and that. It's unfair, number one, to present this person in the way that he was presented from his perspective. And I am not his attorney, but I think that the record is clear that his attorney did the best that he could to protect his client. This co-defendant, this driver, accepted that he was the owner of the weapon. You have an admission that can be used in local court against him. And we're talking 20 to 30 plus years in local court for this weapon. Depending on the circumstances, he could face that much. I want to get to the issue Judge Howard raised with you. But just on this one, the statement as I understand it that was read was during the high-speed chase, the officer observed when the passenger, your client, threw a firearm and fanny pack through the window. That's correct. What's prejudicial about that? I thought the officer did observe. How can the driver say that he has personal knowledge of that? He was driving the car that was going at 80 miles an hour and he doesn't know what the officer was doing. It doesn't say he has personal knowledge. It just says in his plea, he pled to the following facts. During the high-speed chase, the officer observed when the passenger threw it out the window. That's hearsay. He cannot say what the officer back there saw. My question is how is it prejudicial? Well, you are... That was already in the case. No, this is the first... No, I'm saying that these facts were already in the case. You don't contest that the officer observed him throwing it out the window, do you? No. Right. So how is it prejudicial to have put this in? Because you take this person who is a person that has pled guilty. And you see him as your first witness. The thing that is read basically proves the government case. The only thing that the government needed to add here was, yes, I accepted in the version of the facts that Mr. Kenny is a felon. And I accepted in the version of the facts that this weapon was moved in cars. Then you don't need the other testimony. With that, that is enough to prove the case. You do not need to have the policeman testify. Could you get to the last issue about this statement? The argument, the rebuttal argument where they said that, how would you like to have this guy driving in a car next to you? Okay. If you read what I selected from the... what I was talking about when I told the jury, okay, to consider my client. Everything that I was talking about was, be fair to him. My thrust was, be fair to this person. Be aware, be conscious of what you're doing here now, because you're part of his history. When you pass over there, you will think about what you're doing here. And what I was asking for was fairness. A finding of guilt or no guiltiness based on the evidence. The comment by Brother Counsel. And I know Brother Counsel. He's a fine attorney. Okay. So I'm not saying that he did this with an evil intent. I think he's a very... he's an excellent attorney. Okay. But I think that he overstepped when he made a comment that related to the personality of my client. Okay. And I will tell you why it's so important. It's very difficult to see it from the record, but the first time that I saw my client, I said, oh my God. Okay. Husky guy, all tattooed. Okay. He looks like a mini Hulk. Okay. And the reference was, look at that guy. He was pointing at my client. Do you want this guy next to you while you are passing by the Salinas Highway? Okay. It's directed against the person. He's not making reference to the evidence. I was making reference to the evidence. Okay. Does that answer your question? Was this sort of prejudice that you're suggesting, was it obvious at the time that the argument was being made? Yes. I didn't... So why no objection? When you're there, in the heat of the moment, you have to decide whether you put an emphasis with an objection or you allow it to pass to see what happens. I opted to let it pass to see what happens. But when you take a look at all the different things that happened in this case, I think that this was a rebuttal argument. You know, these were the last words that the jury was hearing. What do you mean let it pass to see what happens? What do you mean by see what happens? I would not raise an objection to make a fuss about the comment. Okay. What is it? You didn't want to emphasize it? Right. I did not want to emphasize it. But was there an objection at any point along the way? Not during the closing. I mean, not during his argument, no. No, I mean before it was raised on appeal. In the motions, Rule 29. So let me ask you this. If you made that, if you were aware that the... It's sort of unusual that we have trial counsel here, so forgive me, I just want to probe this a little bit with you. Sure. If you were aware that the statement would probably be prejudicial, and yet chose not to object, that sounds like a waiver. It sounds like a waiver, but it was raised in the motion, the written motion under Rule 29. Yeah, okay. All right. Thank you. You've reserved some time. Thank you. Good morning. USA Max Pettibure on behalf of the government. First of all, I appreciate the words, the kind words from other counsel during his argument. There are six issues before the court. I take it that the court is more interested in issues about the co-defendant's testimony and the comment from your questions. If you have other questions, just interject whenever you want. The co-defendant in this case basically was called to testify consistently to what he was testified before. To his prior statement during his change of plea, which in a nutshell would say that I was driving the car and Kenny Torres was the passenger and he threw the gun and the ammo and the magazines out the window. Yes, he was subpoenaed to be there, but had he testified consistently with his previous statement, there wouldn't be any use for the plea agreement. The plea agreement was never introduced into evidence and it was only brought in when the witness became hostile with the court. He didn't want to be sworn in from the get-go. And this was discussed in depth that the defendant at that time had already been sentenced. He was sentenced to time served, so he had no exposure as to the questions that were going to be limited to the colloquy of the change of plea. But why when he refused to testify and he said that he was going to take the fifth, you knew all that. So didn't your use of the plea agreement highlight this in a way that was unfair? Now I recognize that the defendant made good use of the argument that he admitted that the gun was his. I know that there was cross-examination on that. I know it was argued. But wasn't that error to do it in that fashion where the co-defendant had basically said, I don't want to testify. And you basically read in the plea agreement. Well, basically, he had no Fifth Amendment right. He could not say, I don't want to testify as to that because I take the Fifth Amendment. And what he did say was basically misleading saying and giving the inference to the jury, which was then made reference to in closing argument that the weapon was mine, giving the impression that he was exculpating the defendant that was in trial. At that point, I basically read the paragraph and the judge himself led the questioning. Basically saying, is that what you agreed to? Yes, that's what I agreed to. And that was the end of that topic. Okay. Regarding the closing argument. Just so I understand, that's an argument that even if there, I understand that's an argument that there was no error because it was just used to impeach. Is that the argument? Yes. And secondly, even if it was error, is the argument that it wasn't prejudicial? Well, both are. It was admissible in the Referral Rule 801 D1A. Basically, it allows for admission of a prior inconsistent statement as substantive evidence when they are made under oath. And basically, Judge Helping properly admitted the impeachment, and this time of adopting the clear agreement since his statement in trial was inconsistent with his previous statement under oath. And what was the statement in trial that was inconsistent with it? Basically, he was saying that the weapon was mine and nothing that he was answering would go to ask what he had admitted before, basically. The reason you want to use the plea agreement is you wanted to enhance the question that your brother counsel has raised about intent and so on as to throwing the fanny pack out of the window. You were trying, even though you had a fair amount of other evidence that the fanny pack was thrown out of the window, you brought this in to somehow bolster that argument? That's correct, Your Honor. He said at trial that it was his gun? He testified that it was his gun. I pled guilty. I can say for the record, I'm playing by memory, that yes, I pled guilty and that the weapon was mine. What's inconsistent? Why is that inconsistent with his prior statement? It was his gun. Well, in the way in the manner he was testifying and the way in the manner it happened in trial, it gave the impression that that was mine and that the defendant had nothing to do because he was emphasizing all throughout that I'm not cooperating, I'm not testifying against him, and I came here to accept basically what was his. That's the impression I gave during the trial. And since there was no way of going into further questions, the only way that I could actually impeach that was just to bring in the seminal facts because there basically was no back and forth question. And before just getting an order of contempt and trying to avoid an order of contempt from the judge, that's when I said, Judge, let me try to do this in a more simple manner and just read it from there and just have him accept it. Because if not, he would have not answered the questions and in order to avoid a contempt order from the judge, I did it that way at that time. Okay. As to the, before I address the remarks in rebuttal, I would like to emphasize the strength of the case. As to the knowing, and the defense counsel has stated that we don't know what happened inside the car. Well, there's lots of evidence of what was inside the car that would point as to a knowing possession from the defendant, Kenny Torres. First of all, you have to see that, as it was stated before, that the gun does not have to prove a prolonged possession. And in order to, in this case, the totality of the evidence is overwhelming to support the conviction. First of all, the defendants were driving at high speeds at 1 o'clock in the morning in a major highway, which is the highway that leads to Ponce, when the court has hearings down there. They were ordered to stop and they failed to heave and a high-speed pursuit entailed, covering over 10 miles. He was seen by Sergeant Alvarado, stretching out from the passenger side and throwing what later appeared to be a firearm. And Alvarado testified that he thought it was a firearm from the beginning, but he wasn't sure. And he didn't throw one magazine, he threw five magazines and 72 bullets. There were no other cars there. A backup patrol car was basically coming behind them. Nobody had passed after them and they recovered the evidence. They were then later apprehended and Kenny Torres was the passenger from which the guns were seized. In addition to that, I would like to add, what was discovered inside the car that also points and would assist the jury to reasonably infer the knownly element. Inside the car, the officers also seized a black mask with a skeleton. They also seized two expelled case shells from the back, .40 caliber, and they also seized a trued-up bullet from a .40 caliber. Yes, I would like to also point out that the expert mentioned that those were not shot with a firearm recovered, pointing that there had maybe been another gun in the car. But in that context, in the way that they behaved, in order to stop and what was going on inside, any jury could reasonably infer that he had knowing possession when he was seen discarding the gun. In this case, this doesn't point to innocent possession. At least this points to possession in an attempt to avoid criminal prosecution. As to the strength of the case, I don't know if the judge had any questions as to that, Lanham. Well, again, am I correct that at least one of the officers testified that he was able to pick the defendant out? That he recognized him when he was throwing the... Basically, he testified that the guy that he arrested in the passenger side once the car stopped was the guy that he saw throwing the gun. That's correct, John. Going as to the rebuttal, basically prosecutorial comments need to be taken into context. And in order to do that, the court needs to evaluate the closing arguments of both the counsel. It's the government's understanding that he went beyond asking the jury to be fair. All throughout the closing argument, he was injecting basically a sense of regret. If you find him guilty, you're going to regret it. He went on saying that this case would change the juror's life. He went on to saying that today was a special day because the defendant would place his case, his life, in their hands. Saying that they were going to become part of his history. And in light of that, he also stated that what they did that day would have an effect on him. And in that sense, he then tells them, your days will never be the same. And it's the defense that talked to them in the second person and said, when you drive by Salinas, and it's the defense that told them that you will remember Kenny Torres when you hit Salinas. When you pass the toll, you will remember Kenny Torres. When you pass kilometer 59, 60, when you hit the bridge, you will remember Kenny Torres. And basically, I was there in the trial. I could see the jurors basically becoming uncomfortable. And with the sense of that you're going to be regretting this for the rest of your life. This court has stated that when the defense interjects issues that are broader than innocence or guilt, the prosecution has a right to address those issues in rebuttal. Basically. And it's in that sense that I stood up and tried to diffuse what I had just seen. And basically, I told them basically what the defense counsel said. He placed them in Salinas, I placed them in Salinas. And people don't remember in vague, general, blank terms. It's not remember Kenny Torres. I just put it in context. What did the jurors remember Kenny Torres doing? Driving a car. Why could they remember him being where? In Salinas. And I basically told them depending on what you do, I didn't even suggest what the decision should be. Depending on what you do, you wonder. Remember. You wonder if he's there or not. If he's driving the car next to you or not. You said something a little bit more than that. Basically, you said would you want him in the car next to you? I take it that that's not basically what I said. No, it's sort of what you said. Well, I understand that basically I just repeated what the defense counsel was saying. And basically placed them in Salinas. I placed them driving as to the facts of the case. And it's the defendant that placed the jurors driving down Salinas. And told them that when you do that you're going to remember Kenny Torres. And basically, that's the extent of the comment. So here's what you said. Well, the government also wants you to remember the decision that you make today when you're driving down Salinas and you wonder, depending on your decision, whether Kenny Torres Colon is also driving along by you in the car beside you. Is that more consistent with what you're saying or what Judge Stahl said? Basically, that's what I said. Oh, you mean the inference that could be done. In any event, I have four minutes. In any event, any concern from the court as to that statement, I would then suggest that it was an isolated statement. Basically, it was an isolated statement that I just mentioned. I understand that I just was quoting the defense counsel. And that's what I do in rebuttal arguments. He was saying that today is a special day and I started off my rebuttal saying that today is Kenny Torres' judgment day. Basically, I try to take what's in the rebuttal, what's in the closing argument, and try to rebut it to the best of my sense in the amount of time that I have to conduct a rebuttal. I do recognize the concerns of the court. If that's so, I would then say that it's an isolated comment in an 8-9 rebuttal. It was not so obvious at the time that the defense counsel never objected to it. I understand that that compared with the strength of the case, which I already addressed in my argument, is overwhelming. And maybe it wasn't even necessary to do in light of the whole strength of the case. And definitely, that isolated, sole comment would not render an unfair trial to Mr. Kenny Torres and would definitely not warrant a new trial. How long was the jury out, do you recall? It was that same afternoon. I think the jury was out for two or three hours. The jury was out for two or three hours that same afternoon. Thank you very much. Thank you. Good morning again. There were no inconsistent statements by the driver. So the fact that the counsel is saying that he was making inconsistent statements and that they needed to present the plea agreement does not go too far. It doesn't meet AO1D1A. I want to point out that the appendix at page 85 has the section of my Rule 29 motion where I make the comments about the improper comments presented by my brother counsel. As to the car, the record is clear. Only two objects were thrown out. It sounded like he was throwing one ammunition, another ammunition, you know. He threw two things. The fanny pack had the magazines and had the ammo. But what he threw out were just two objects. Judge Howard just quoted what was said by the government from page 31 of my brief. I want to point to the court that in page 32 you have what I said and what he was responding to. So I don't have to quote that again. Any further questions? No, thank you both.